Banjamin Mills, as counsel for the appellants, presented the following petition, for a re-hearing,

The counsel for the appellants again call the attention of tlie court to this case, notwithstanding the long time it has been on hand, and they are constrained to do so from a conviction that the last decision materially affects their interest, and indeed as to part of the slaves in contest, is virtually against the decision heretofore made in their favor.
Indeed the record is so voluminous and confused, the suits and parties so many, that they do not wonder that some part of it should be overlooked. In *390 deed it is a burlhensome case to both court and court* sel, and mistakes in it need not be wondered at.
Petition fora re-hearing.
The ntígro, Bill, was one of the original stock, bought by Pickett at the original sale of the slaves, as the property of AIx. D. Orr, and paid for by the money of Benj. Grayson Orr and John Linton, under the full understandidg that they were to be settled on Mrs. Orr and her two daughters, Mary and Norah. And Bill was the first whom Pickett seized, under execution, and sold, and William Orr became the purchaser, and gave the sale bond with Payne as his surety; the execution under which he was sold was in the joint names of Pickett and two others, and Pickett was the active agent in procuring the sale. Finding that he was successful with Bill, he then seized the rest, except the girl, which he had previously bought himself of A. D. Orr. On the seizure of the last, the injunction was granted, which commenced the first of the suits contained in the mammoth record before the court. On the former hearing, tbe title of Mrs. Orr, and her two daughters, was established beyond contradiction, even against the creditors of Alex. D. Orr, and Pickett was declared responsible for all the slaves, and compelled to give up all that he held by purchase from A. D. Orr.
But with regard to the slave Bill, held by purchase under execution by Wm. Orr, this difficult}' then occurred, should Wm. Orr and Payne his surety, be relieved from their sale bond, and be compelled to deliver the slave to the complainants, or should Pickett be made to account for his value, or rather, the court suspended all relief as to Bill, till it was determined what should be done as to William Orr and his surety Payne.
Stopping at this point alone, certainly did not prejudice the rights of Mrs. Orr and her two daughters, Mary and Norah, to recover either Bill or his value. Their right to this is put beyond all question by the first decree, which has now gone beyond the power of the court. And what we now complain of, is, that the court in the last decree has decided, simply, that William Orr shall have no relief from his sale bond, and has stopped there, and refused to give Mrs. Orr sjnd her two daughters any relief as to the slave Bill, *391 and thus they have lost both him and his value.
petition for a re-hearing,
The undersigned cannot see the propriety of the total loss of Bill, if we are entitled to the rest. Pickett had the rest under execution and ready to sell, when the injunction stopped him, and we have, by our proceeding in equity, taken off his execution from the rest of the slaves and recovered them; but as he was more lively with Bill and actually got him sold by his own execution, has he placed both Bill and his value beyond our reach, so that we cannot recover either? Such is the effect of the decree last rendered, and we feel some confidence that the court did not intend this. Indeed it is inconsistent with the former decree. This is one of the main reasons of troubling the court with this petition.
Now, if the sale of Bill, under execution, could not prejudice or destroy our title to him, we are entitled to recover Bill, with his hire, from William Orr, although he (Orr) has to pay for him; or we are entitled to recover the value of Bill with his hire from Pickett. Either would do us justice. But if neither is tobe granted, we suffer wrong irreparably.
If William Orr and Payne his surety, have to pay for Bill, still we are entitled to recover him, and this was what really happened in the case of McGhee vs. Ellis and Browning, to which the court refers. Ellis lost the slave himself, in detinue, and then had to pay the price of him to McGhee afterwards. So here, William Orr may lose the slave by the recovery of him by Mrs. Orr and her two daughters, and yet have-to pay for him to Pickett.
Butitmay be said thatMrs. Orrandhertwo daughters are not'in a situation to do this, because they are complainants, with William Orr the purchaser and Payne his surety. True, they are in one bill; but in another they stand in a different attitude. The court will find that on examining the answer to Doctor Warfield’s bill, (which bill at the 86th page of the record begins, 1. again,) and that answer begins at page eight, of Warfield’s record, it is made a bill against William Orr, his surety Payne and Pickett to recover Bill, (we do not say a cross bill, as it is often falsely called by counsel, for there is no cross bill except by defendant against complainant.) It is a bill by one *392 ^e^en^an^ against another, and bringing in the third parties, William Orr and Payne, which is allowed by act of Assembly, instead of filing a new bill. Then is prayed thal full relief maji be given to recover Bill from William Orr, or his value from Pickett, and yet this court has refused it!
re-heanng?1 a
We make these remarks on the supposition that William Orr shall still have to pay up ids bond, and still lose Bill; but we do not wish him tobe subject to such an ill. We do not conceive his case comes within the principle settled in the case of McGhee vs. Ellis and Browning, for that case concludes with these expressions.
“We will remark, that so far as we have laid down any principle in this opinion screening the creditor from any liability to make good property sold under his execution, or the debtor from becoming liable to an action at law’, in favor of the purchaser, for the price of the property sold, we would not bo understood as applying it to cases, where either the creditor or debtor has been immediately instrumental in causing the property of a stranger to be sold, and thus been the causeof deceiving the purchaser, such cases may stand on different grounds from this, when the sheriff tools his course without the direct agency of either [creditor or debtor] and the de'cision of them is reserved until they occur.”
Now what is this case before the court? Pickett was a plaintiff in the execution that sold Bill. He is expressly charged w’ith being instrumental in causing Bill to be siezed and sold, and this in answer to the bill annexed to-the answer of Warfield’s bill, he dues not deny, but even admits it there, as well as by his demurrers in other parts of the record. He was then instrumental, directly’, in forcing the sale of Bill. This cannot be denied. The proof is abundant. Is his case, therefore, embraced by the case of McGhee vs. Ellis, &c? It is not, but is expressly excepted in that case. What is still more, Pickett was guilty and iniquitously instrumental in forcing the sale of Bill. He knew that he had bought Bill over for Mrs. Orr and her daughters, and that he had received the money of B. G. Orr and Linton, to pay for him. He was, as the court has properly made him in the for*- *393 iráer opinion, the complete trustee of Mrs. Orr an?! her daug hters, and bound to protect Bill from execution; and yet he is found pressing his own execution against A. D. Orr, against this very éstate, and forcing this property into market in the face of his trust, and against conscience, and to put the price of Bill in his own pocket in fraud of the trust which he had undertaken, and yet he is not responsible to the purchaser! This is extending the principle of McGhee vs. Ellis and Browning far, far beyond fvhat was intended, and making it do iniquity. This court, in the case of Forsythe vs. Ellis, seem to yield to the whole case of McGhee vs. Ellis and Browning with great reluctance. Indeed they disapprove its principle, but follow the case. It could not have been ex pected that the court would have been found, in so short a time, extending the principle to such an alarming extent, as to shield ndt only a creditor immediately instrumental in forcing the sale of the property, but one forcing trust property into market in violation of the title which he then held as trustee; and it can only be accounted for on the ground that it is im^ providently done, by supposing the cases analagous; when they are far from being so; indeed, in searching the whole record they are widely at opposite extremes. The court has, in its former opinion, justly convicted Pickett of fraud, in attempting to extend his credit with A. D. Orr, and forcing the estate to bé sold to satisfy these debts; and yet, in the opinion now under consideration, he is allowed to escape with the whole value and price of Bill, and Mrs. Orr and her daughters must lose him forever! We do therefore, earnestly but respectfully contend that the pro¿ per decree as to the slave Bill, (for Bill’s case is now to be decided on the whole record,) on all the billsi, answers, and proofs, as they are all as to the negro Bill before the court, is, that Mrs. Orr and her two daughters should recover the slave Bill from William Orr; with his hire to be paid by Pickett since the sale, and that William Orr and Payne shall be relieved front their sale bond, engaging the price of Bill, and that Pickett ought to pay all costs, and be left withoiit redress, or if he is entitled to apy, which is contested; it is not more than a decree against the debtor A. D; Orr, for the price for which Bill sold; ánd he is not en» *394 titled to sue the sheriff as Ellis was in McGhee vs. Ellis, &c. because he iniquitously made a sale of Bill, and forced the sheriff to make it. The best which he ought, however, to have in this respect is, to leave claim as to A. D. Orr without prejudice.
Petition for a re-hearing.
Shearing^18,
This latter course insisted on, we contend, is the correct decree. But even if William Orr and his surety is not (o be relieved from their sale bond, still Mrs. Orr and her two daughters are entitled to recover Bill, with his hire from the time of the sale, from William Orr, or the value of the slave Bill, and his hire from Pickett.
We will further observe, the court seems to think that only one of the cases is reserved for this latter decision. We understand that the reservation is as to the slave Bill, on all the cases. Indeed all the cases, so far as Bill is concerned, are still before the court. The slave Bill is brought into every cause, and they are all consolidated and heard together by the orders of the court below, and cannot be separated till complete justice is done. The court must look info all in deciding on Bill’s fate, as much as to settle the title as to the rest of the slaves.
The conrt treats the bill of William Orr, Payne and Mrs. Orr and her two daughters as on demurrer. If it is to be treated on demurrer, and that demurrer ought to be sustained, because, that parties were united as complainants, who ought not to be, it follows, that the dismission on sustaining the demurrer ought to'have been below, and ought now to be without prejudice. This is always the rule when parties are too few or too many; yet the court below has dismissed, absolutely, and this court has affirmed that part of the decision.
But the case of this bill is not only to be considered as on demurrer, but as on the merits on answer, also. For on a page of the record,immediately preceding the decree, there is an express agreement, (the page is marked 11) that the answers of Pickett and Gill to the amended bill in Warefield’s case, shall be considered and received as answers to the bill in the case of Orr and Payne, &c. and also that the bill in that'case and the amended bill in the case of War- *395 field shall be taken and considered as demurred to, by defendants Pickett, Gill and Perrin. By this agreement the bill is to be considered both on answer and demurrer; that is, the defendants are to at liberty to insist there is no equity in the bill, and if there is, that the answers and proof destroy it. This is the fair construction of their agreement.
There is one other point which, though named last, is still of great importance, and it has been overlooked in the former opinion, and may do great injury between thh parties. It is the right of Mrs. Orr and her two daughters between each other, as to the partition of the slaves. Any thing said in these cases may bind them when not intended.
Let it be recollected, that the quantity of money furnished by Benj. G. Orr, to purchase slaves for Mrs. Orr and her two daughters Mary and Norah, equally, was $1200. The sum furnished by Linton was $400, making in all $1G00. But the proof is clear that the $400 furnished by Linton, was furnished to Mrs. Orr alone, and not for the two daughters, this gives to Mrs. Orr 7-16 of the slaves, and the two daughters 9-16 to be divided between them; and the daughters are not entitled to an equal division of the whole estate, as the court seems to insinuate, without intruding it in the first opinion. This ought to be corrected by directing the division in the proportion of 7-16 to Mrs. Orr, and the rest to the daughters, or the point ought to be carefully thrown open so as not to prejudice the question in any subsequent proceedings for a partition between Mrs. Orr and her two daughters.
For these reasons the undersigned ¡¡solicits a modification of the decree rendered in conformity to the foregoing points, or a re-hearing if necessary.